**ACACIA MUTUAL LIFE INSURANCE CO., and Karl W. Corby, Plaintiffs,**

v.

**Albert F. JORDAN, Superintendent of Insurance, Defendant.**

**Civ. A. No. 266–68.**

United States District Court
District of Columbia.

May 1, 1968.

John J. Wilson and Frank H. Strickler, Washington, D. C., for plaintiffs.

Vincent E. Ferretti, Jr., Asst. Corp. Counsel, for defendant.

## OPINION

**HOLTZOFF, District Judge.**

The question presented in this case is whether a person who has borrowed money from a District of Columbia insurance company is eligible to become a member of the board of directors or an officer of the company while the loan is outstanding. The answer depends on the construction of one of the provisions of the Code of the District of Columbia relating to insurance companies.

The facts out of which this question arises are few and undisputed. On April 12th, 1962 plaintiff Acacia Mutual Life Insurance Company made a loan of $288,000, secured by a mortgage on an office building in the District of Columbia, to a number of persons, including the plaintiff Karl W. Corby. The loan was for 21 years. On March 21, 1967, five years later, while the loan was still outstanding but in current condition, the plaintiff Corby was elected a member of the board of directors of Acacia. The question is whether he was eligible to election to that office.

The Superintendent of Insurance of the District of Columbia has indicated that in his opinion plaintiff Corby is not eligible to fill the office of director in the light of the foregoing circumstances and has indicated that he would consider withdrawing necessary annual certificates from Acacia if the situation continues. Acacia takes the position that the statutory prohibition bars a director or an officer from borrowing money from his insurance company, but does not relate to or include situations where a person who has borrowed money from the insurance company later becomes a director or an officer while the loan is still outstanding.

This action was brought by the two plaintiffs against the Superintendent of Insurance for a declaratory judgment and is before the Court at this time on cross-motions for summary judgment. The Corporation Counsel, who represents the defendant, with commendable candor, concedes that there is a justiciable controversy in view of the possible sanctions that may be applied to the insurance company and the serious consequences that may result from them.

The answer to the question or the solution of the problem here presented depends on the construction of the applicable statute, which is found in D.C. Code, Title 35, Section 530. It reads as follows:

"No director or officer of any company doing business in the District shall receive any money or valuable thing for negotiating, procuring, recommending, or aiding in any purchase by or sale to such company of any property, or any loan from such company, nor be pecuniarily interested, either as principal, coprincipal, agent, or beneficiary, in any such purchase, sale, or loan, nor shall the financial obligation of any such director or officer be guaranteed by such company in any capacity: *Provided,* That nothing herein contained shall prevent any such director or officer from receiving a fee for appraising property for said company or for serving on any committee that passes on the investments of said company: *Provided further,* That nothing herein contained shall prevent a life insurance company from making a loan upon a policy held therein by a director not in excess of the net value thereof. Any person violating any provision of this section shall be guilty of a misdemeanor."

It is natural for the Superintendent of Insurance, who is an efficient, enlightened and dedicated public servant, to adopt such a construction of the statute as in his opinion would best effectuate its purposes and best protect the interests of the insurance company, its policyholders and the community. He is to be commended for this attitude. The Court, however, must construe the statute.

At the outset it must be emphasized that a criminal penalty is attached to the statute and, therefore, it

must be treated as a penal statute. It is fundamental that penal statutes must be strictly construed. This rule does not mean that the narrowest and strictest possible interpretation must be put on a penal statute that might completely defeat the purpose of Congress and devitalize the provisions. It does mean, however, that while the courts should put a reasonable construction on a penal statute, nevertheless, it should not be broadly or liberally construed but should be interpreted in a narrow and strict manner because of the criminal penalty that may be imposed for its violation. An entirely different problem might have been presented here if the statute were a purely regulatory measure, contained no sanctions except those of a civil nature, and perhaps vested in the Superintendent the authority and power to promulgate regulations that would interpret the Act. This is not such a case.

Bearing in mind the principle to which reference has just been made, that penal statutes must be strictly construed, it is necessary to proceed to analyze the Act. There are two separate aspects to this statutory provision. The first is to the effect that no director or officer of any company doing business in the District shall receive any money or valuable thing for negotiating, procuring, recommending or aiding in any purchase by, or sale to, such company of any property or any loan from such company. The other provision is that he shall not be pecuniarily interested, either as principal, co-principal, agent or beneficiary, in any such purchase, sale or loan. It is well to consider these two parts of the statute separately.

The first part of the statute is itself susceptible of more than one construction. One way to read that clause is as follows:

"No director or officer of any company doing business in the District shall receive any money or valuable thing for negotiating, procuring, recommending or aiding in * * * any loan from such company."

The meaning of the provision, if so read, would be that a director or officer may not receive any compensation, fee or commission for procuring a loan to be made.

■ There is another way of reading that provision and it is as follows:

"No director or officer of any company doing business in the District shall receive * * * any loan from such company."

The first of these two constructions would adopt too narrow a view because it is quite apparent that Congress intended to reach at least two results. One was to bar a director or officer from receiving any compensation, such as a broker's commission, for procuring a loan to be made. The other was—and perhaps a more important one—to prevent a director or officer of an insurance company from borrowing any money from the insurance company while he was a director or officer.

■ The second part of the statute bans a director or officer of any insurance company from being "pecuniarily interested, either as principal, coprincipal, agent or beneficiary, in any such purchase, sale or loan." This clause is clearly ambiguous and indefinite. What is meant by being pecuniarily interested in a loan either as principal, co-principal, agent or beneficiary? Does it mean and does it relate to the transaction of lending money, or does it have a broader scope and apply to the status of a loan so as to be effective during the entire period when the loan is in existence? Bearing in mind that, as stated heretofore, penal statutes should be narrowly construed, the Court is of the opinion that the first of these two constructions should be adopted.

In addition to the requirement of narrow construction of penal statutes we must apply another principle, that ambiguities in a penal statute should be resolved in favor of a person who is affected by it, in view of the basic doctrine that a criminal penalty shall not be imposed on anyone for some violation

that is not clearly accentuated in the statute.

■ In the light of these considerations the Court construes this statute, insofar as the question involved in this case is concerned, as containing two prohibitions. One is that no director or officer of any insurance company doing business in the District of Columbia may receive any compensation, such as broker's commission or fee, for negotiating or procuring a loan from the company with which he is connected; second, that no director or officer may receive any loan from the company of which he is a director or officer. It does not bar a person who had previously received a loan from the company from later on becoming a director or officer, even though the loan may be still outstanding. The conclusion necessarily follows that the plaintiff Corby was eligible to be elected to the Board of Directors of Acacia and is eligible to continue as such.

The plaintiffs' motion for summary judgment is granted and the defendant's cross-motion is denied.